UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

DOUGLAS F. VAUGHAN,

    Debtor,

YVETTE GONZALES, Trustee

    Plaintiff,

                                          12 CV 411 JAP/SMV

vs.

JUDITH A. WAGNER, Trustee of the
Bankruptcy Estate of the Vaughan Company Realtors,
DAVID H. WOLLEN,
RACHEL WOLLEN ADENT, individually,
RACHEL WOLLEN ADENT, as Trustee of the Leah Adent
and Hannah Adent Trust,
JOHN OR JANE DOE, as Trustee of the Julius M. Wollen
and Diana Wollen Revocable Trust, and
VAUGHAN CAPITAL, LLC,

    Defendants

**MEMORANDUM OPINION AND ORDER**

On February 21, 2012, Yvette Gonzales (Gonzales), Chapter 7 Trustee of the Douglas F. Vaughan bankruptcy estate, filed this adversary proceeding under 11 U.S.C. §§ 547 and 548 to recover title to and avoid liens on a parcel of real property in Bernalillo County, New Mexico

1

(the Real Property).¹  Gonzales claims Douglas F. Vaughan (Vaughan) transferred the Real Property to Vaughan Company Realtors (VCR), a related entity currently in Chapter 11 bankruptcy,² and that VCR subsequently transferred the Real Property to Vaughan Capital, LLC,³ as part of a scheme to defraud creditors.  Gonzales also claims that Vaughan, through VCR, granted mortgage liens encumbering the Real Property shortly before the bankruptcy filings, and Gonzales seeks to avoid the mortgage liens as preferential transfers under 11 U.S.C. § 547.

Both Vaughan and VCR filed bankruptcy cases on February 22, 2010.  The bankruptcy cases revealed that Vaughan had perpetrated a Ponzi scheme in which investors loaned money to Vaughan or VCR in exchange for promissory notes at high rates of interest.⁴  On May 20, 2010, Vaughan's individual Chapter 11 bankruptcy case was converted to Chapter 7, and Gonzales was

---

¹ The Real Property is described as follows:

> Lot Numbered Ten (10) in Block numbered Twelve (12) of Tract 2, Unit 1, NORTH ALBUQUERQUE ACRE (sic), an Addition to Bernalillo County, New Mexico, as the same is shown and designated on the Map o (sic) said Addition, filed in the Office of the County Clerk of Bernalillo County, New Mexico on March 23, 1931, in Plat Book D, folio 132.

(Mot. 2.)

² On February 22, 2010, VCR filed for Chapter 11 bankruptcy protection.

³ Vaughan claims he has a 20% ownership or membership interest in Vaughan Capital, LLC.

⁴ Vaughan has pleaded guilty to one count of wire fraud and one count of mail fraud and is serving a 144-month term of imprisonment.  A "Ponzi" scheme refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments.  Typically, investors are promised large returns for their investments.  Initial investors are actually paid the promised returns, which attract additional investors. *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Associates, Inc.)*, 48 F.3d 470, 471 n.2 (10th Cir. 1995) (citations omitted).

appointed Chapter 7 Trustee.  Judith A. Wagner (Wagner) was appointed Chapter 11 Trustee in the VCR bankruptcy on April 29, 2010.  Gonzales and Wagner have filed numerous adversary proceedings against individuals and entities alleged to have received money or property from Vaughan or VCR prior to the bankruptcy filings.  *See* Case No. 12 CV 817 WJ/SMV (master case).[5]

In this proceeding, Gonzales seeks to avoid mortgage liens granted to creditors David H. Wollen and Rachel Wollen Adent, individually, Rachel Wollen Adent as trustee of the Leah Adent and Hannah Adent Trust, and John or Jane Doe, as trustee(s) of the Julius M. Wollen and Diana Wollen Revocable Trust (together the Wollen Defendants).[6]  The Wollen Defendants, as many others had done, invested money with Vaughan and in exchange received promissory notes and mortgages.  This promissory note program was the primary vehicle used to perpetrate the Ponzi scheme.

On October 10, 2012, the Wollen Defendants filed their MOTION TO DISMISS AS TO THE WOLLEN DEFENDANTS UNDER RULE 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE WOLLEN DEFENDANTS ON

---

[5] In the JOINT STATUS REPORT AND PROVISIONAL DISCOVERY PLAN (Doc. No. 2-4) filed in the master case, the parties state that Wagner has filed 161 adversary proceedings against 200 defendants seeking to recover fraudulent and preferential transfers of property. (*Id.* 1.)  Out of those adversary proceedings, 52 cases are pending in United Stated District Court after orders to withdraw the reference were entered. (*Id.*) Wagner is pursuing an adversary proceeding against the Wollen Defendants in the VCR bankruptcy, and United States District Judge William P. Johnson is presiding over that proceeding.

[6] The identity of the trustee for The Julius M. Wollen and Diana Wollen Revocable Trust is not clear from the record.  The Court will refer to the trust by name only.

COUNT 2 (Doc. No. 10) (Motion).[7] No response to the Motion appears on the docket. Under D.N.M. LR-Civ. 7.1(b), a party who fails to file and serve a response to a motion is deemed to have consented to the Motion; therefore, the Court may grant the Motion by consent. However, because part of the Motion argues lack of subject matter jurisdiction, the Court will partially deny the Motion because the Court has subject matter jurisdiction of this dispute. The Court will grant the Motion in part by deemed consent and on the merits.

    I. Standard of Review Under Rules 12(b)(1), 12(b)(6) and 56.

The Motion first asks the Court to dismiss this proceeding under Rule 12(b)(1) arguing that the Court lacks subject matter jurisdiction. The Wollen Defendants contend that this Court lacks subject matter jurisdiction because Gonzales has no standing to assert these claims in federal court. *Merrill v. Abbott (In re Independent Clearing House Co.*, 77 B.R. 843, 852-53 (D. Utah 1987) (discussing subject matter jurisdiction and standing of Chapter 7 Trustee to bring fraudulent transfer claims).

The Motion also seeks dismissal under Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a complaint may be dismissed if the claimant has failed to state a claim on which relief may be granted. For purposes of ruling on a motion brought under Rule 12, the Court assumes that all well-pleaded facts alleged in the complaint are true. "[T]he key issue in analyzing a motion to dismiss is whether the well-pleaded allegations of the complaint "'plausibly give rise to an entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine

---

[7] In the Motion the Wollen Defendants ask the Court to dismiss only Count 2 of the Complaint alleging that the mortgages granted to the Wollen Defendants are avoidable as preferences. Gonzales' Count 1 claim that the mortgages are avoidable as fraudulent transfers will not be dismissed and remains pending.

whether they plausibly give rise to an entitlement to relief.").

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Wollen Defendants' initial burden is to show the absence of evidence to support Gonzales' claims. *Celotex v. Catrett,* 477 U.S. 317, 325 (1986). The Wollen Defendants must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Universal Money Centers v. AT & T*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The Court may grant summary judgment if the facts supported by admissible evidence of record show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* Since the Wollen Defendants have included with the Motion affidavits and documentary evidence, including Warranty Deeds, Promissory Notes, Addenda to the Promissory Notes, Mortgages, and Assignments of Notes and Mortgages, the Court will decide the merits of the Motion under the Rule 56 summary judgment standard. Fed. R. Civ. P. 12(d).

    I.  Background

        A.  The December 30, 2009 Transactions

On December 30, 2009, David H. Wollen and Rachel Wollen Adent, on advice of their father Julius M. Wollen, made loans to VCR in exchange for promissory notes secured by mortgages on the Real Property. At the closing of this loan transaction on December 30, 2009,

several transfers occurred. First, Thomas Frederick Lyman and Marrion Lyman transferred the Real Property to Vaughan by Warranty Deed. (Julius Wollen Aff. ¶ 4 and Ex. 1 to Julius Wollen Aff.) Julius M. Wollen, who attended the closing on behalf of his daughter, Rachel Wollen Adent, presented to Vaughan from Rachel Wollen Adent a $25,000.00 cashier's check payable to Vaughan Capital, LLC. (*Id.* ¶ 5; Rachel Wollen Adent Aff. ¶ 3.)[8] In exchange for the $25,000.00 loan, Vaughan, on behalf of VCR, executed a Promissory Note (the $25,000 Note) payable to Rachel Wollen Adent, in trust for Rachel's daughters, Leah and Hannah Adent. (*Id.* Ex. 2.) In the $25,000 Note, VCR agreed to pay the principal with interest at the rate of 20% per annum payable in monthly installments of $416.67 until December 1, 2012, the maturity date. (*Id.*) Vaughan signed a personal guaranty of the $25,000 Note. (*Id.*) To secure the $25,000 Note, Vaughan, on behalf of VCR, executed a Mortgage granting a lien on the Real Property. (the Rachel Wollen Adent Mortgage). (*Id.* Ex. 3.)

Also at the closing on December 30, 2009, David H. Wollen loaned $150,000.00 to VCR in exchange for a Promissory Note from VCR (the $150,000 Note). (David H. Wollen Aff. ¶ 3 and Ex. 1.)[9] In the $150,000 Note, Vaughan, on behalf of VCR, agreed to pay the principal with

---

[8] On December 30, 2009, Vaughan and Rachel Wollen Adent executed an ADDENDUM TO THE PROMISSORY NOTE DATED DECEMBER 30, 2009 BETWEEN THE VAUGHAN COMPANY REALTORS AND RACHEL WOLLEN ADENT, AN UNMARRIED WOMAN (Julius M. Wollen Aff. Ex. 2 at 3.) in which the parties recognized that the debt to Rachel Wollen Adent was incurred by VCR despite the fact that the cashier's check was payable to Vaughan Capital, LLC.

[9] The same circumstances occurred with respect to the loan from David H. Wollen. The cashier's check in the amount of $150,000.00 was payable to Vaughan Capital, LLC but an ADDENDUM TO THE PROMISSORY NOTED DATED DECEMBER 30, 2009 BETWEEN THE VAUGHAN COMPANY REALTORS AND DAVID H. WOLLEN, AN UNMARRIED MAN (David H. Wollen Aff. Ex. 1 at 4) was executed to clarify that the debt to David H. Wollen was incurred by VCR despite the fact that the cashier's check was payable to Vaughan Capital, LLC.

interest at the rate of 20% per annum payable in monthly installments of $2,500.00 until December 1, 2012, the maturity date. (*Id.*)  Vaughan signed a personal guaranty of the $150,000 Note. (*Id.*)  To secure the $150,000 Note, Vaughan, on behalf of VCR, executed a Mortgage granting a lien on the Real Property (the David Wollen Mortgage). (*Id.* Ex. 3.)

Gonzales alleges that Vaughan later conveyed his interest in the Real Property to VCR by deed recorded in Bernalillo County. (Compl. ¶ 11.)  Gonzales further alleges that on December 31, 2009, Vaughan caused VCR to transfer the Real Property to Vaughan Capital, LLC by Warranty Deed. (Compl. ¶ 15.)

On February 22, 2010, Vaughan and VCR filed Chapter 11 bankruptcy petitions.  The Vaughan bankruptcy case was converted to a Chapter 7 bankruptcy on May 10, 2010.  On May 11, 2010, Rachel Wollen Adent assigned her interest in the $25,000 Note and the Rachel Wollen Adent Mortgage to The Julius M. Wollen and Diane Wollen Revocable Trust dated October 20, 1993 (the Wollen Revocable Trust). (Julius Wollen Aff. ¶ 7; Exs. 4 and 5.)  On May 28, 2010, David H. Wollen assigned his interest in the $150,000 Note and the David Wollen Mortgage to the Wollen Revocable Trust.  In affidavits, Rachel Wollen Adent and David H. Wollen testify that they assigned the notes and mortgages so that their father, Julius M. Wollen, could handle the costly and time-consuming litigation anticipated after the bankruptcies were filed. (*Id.*)  For this discussion, the Court will refer to the notes and mortgages collectively as the Wollen Notes and the Wollen Mortgages.

      B.  Gonzales' Claims

On February 21, 2012, Gonzales filed in the Bankruptcy Court the COMPLAINT TO RECOVER FRAUDULENT TRANSFERS OR, IN THE ALTERNATIVE, PREFERENCES (Doc. No. 1 Adv. No. 12-1143s).  On November 6, 2012, United States District Judge William P.

Johnson entered an order withdrawing the bankruptcy court reference, and the case was assigned to this Court.  (*See* Case No. 12 CV 411 Doc. No. 11.)

In Count 1 of the complaint, Gonzales seeks to avoid the Wollen Notes and the Wollen Mortgages under 11 U.S.C. §548[10] contending that Vaughan entered into these transactions with the intent to defraud creditors.  Gonzales seeks to recover the Real Property free of liens for the

---

[10] Section 548 provides,

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or the date that such transfer was made or such obligation was incurred, indebted; or
> > (B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date of such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

benefit of creditors under 11 U.S.C. § 550.[11]

In Count 2 of the Complaint, Gonzales alleges that the Wollen Mortgages were preferential and are avoidable under 11 U.S.C. § 547.[12]

II. Discussion

A. Subject Matter Jurisdiction: Property of the Bankruptcy Estate

In the Motion, the Wollen Defendants first argue that the Court lacks subject matter jurisdiction over matters involving the Real Property because it is not property of the Vaughan bankruptcy estate. The Court recognizes that it has jurisdiction over ". . . disputes regarding alleged property of the bankruptcy estate . . . ." *Cf. In re Gardner*, 913 F.2d 1515, 1517-18 (10th

---

[11] Section 550 provides,

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –

(1) the initial transferee of such transfer . . .; or
(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

Subsection (b) of § 550 provides that the trustee may not recover under § 550(a)(2) if a transferee takes the transfer of property for value, in good faith and without knowledge of the voidability of the transfer.

[12] Specifically, Gonzales asks the Court for a judgment avoiding the transfer of the Real Property by Vaughan to VCR and Vaughan Capital, LLC and for an order requiring Vaughan Capital, LLC to turn over the Subject Property. (Compl. ¶¶ 21(a), (c).) Alternatively, Gonzales asks for a money judgment against Vaughan Capital, LLC for the value of the Real Property. (Compl. ¶ 21(d).) Gonzales asks for a judgment "avoiding the transfer of the mortgages in the [Real] Property to David H. Wollen and Rachel Wollen Adent and any subsequent transferees;" and for an order that the Wollen Mortgages "are of no force and effect . . . ." (Compl. ¶ 21(b), (f).)

9

Cir. 1990) (vacating a judgment of the bankruptcy court adjudicating lien priority and holding that the bankruptcy court had no jurisdiction over the real property awarded to debtor's ex-spouse prior to the bankruptcy because the real property was not property of the bankruptcy estate ) (citing *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987).  The Court also recognizes that "property of the estate" includes, "all legal and equitable interests of the debtor in property at the commencement of the case." 11 U.S.C. § 541(a)(1).  Moreover, Gonzales, as Chapter 7 trustee, has the duty to administer only property of the Vaughan bankruptcy estate. 11 U.S.C. § 704(a)(1); *In re Parks,* 255 B.R. 768, 770 (Bankr. D. Utah 2012).  According to the Wollen Defendants, the Real Property is not property of the Vaughan bankruptcy estate, and Gonzales has no standing to bring this proceeding.  However, property of the bankruptcy estate also includes, "any interest in property the trustee recovers under section . . . 550 . . . of this title." 11 U.S.C. § 541(a)(3).  Section 550 allows recovery of property that the debtor fraudulently or preferentially transferred prior to filing bankruptcy. 11 U.S.C. § 550.

Notably, the circuit courts of appeal are split over whether property alleged to have been fraudulently transferred belongs to the bankruptcy estate prior to a judicial determination and subsequent recovery of the  property.  The majority view, followed by bankruptcy and district courts in the Tenth Circuit, was first articulated by the Second Circuit Court of Appeals.  *See FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125 (2d Cir. 1992).  In *Colonial*, the Second Circuit interpreted the applicable provisions of the Bankruptcy Code and found that property held by third-party transferees becomes property of the estate only after the transfer has been avoided. *Id.* at 131. *Accord*, *In re Silver*, 303 B.R. 849,864 (B.A.P. 10th Cir. 2004) (noting that property subject to tax lien was not property of the estate prior to its recovery); *Rajala v. Gardner*, No. 09–2482, 2012 WL 1189773, *7 (D. Kan. Apr. 9, 2012) (recognizing holding in

*Colonial Realty* as majority view); *In re Loeffler*, Case No. 10-39898, 2011 WL 6736066, *3 (Bankr. D. Colo. Dec. 21, 2011) (agreeing with the Second Circuit and stating that the proceeds of actions seeking avoidance of fraudulent conveyances do not become estate property until actually recovered by the trustee).

While the Wollen Defendants' correctly argue that the Real Property is not technically property of the bankruptcy estate, the Wollen Defendants fail to recognize that Gonzales, as Chapter 7 trustee, has standing to avoid all fraudulent or preferential transfers and to recover property for the benefit of Vaughan's creditors. 11 U.S.C. § 550. Therefore, Gonzales has standing to bring a fraudulent conveyance action, and if Gonzales recovers the Real Property for the bankruptcy estate, Gonzales retains standing to avoid the Wollen Mortgages on the Real Property if the Court determines the transfers were preferential or fraudulent. *See In re Berg*, 376 B.R. 303, 311-312 (Bankr. D. Kan. 2007) (noting that trustee has exclusive standing to bring fraudulent conveyance action in bankruptcy). Consequently, the Court has jurisdiction to adjudicate this adversary proceeding even though the Real Property is not currently property of the Vaughan bankruptcy estate.

### B. Summary Judgment on Count 2 of the Complaint

#### 1. The Mortgages Are Not Preferential Transfers.

In Count 2, Gonzales seeks to avoid the mortgages held by the Wollen Defendants on the ground the mortgages were preferential transfers. Section 547(b) of the Bankruptcy Code allows a trustee to avoid any transfer of an interest of the debtor in property–

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (c) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547 (b).

However, under § 547 (c), the trustee may not avoid a transfer

> (1) to the extent that such transfer was--
> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> > (B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547 (c).

For purposes of the Motion, the Wollen Defendants do not dispute that the Wollen Mortgages were transfers "to or for the benefit of a creditor" because the Wollen Defendants loaned a total of $175,000.00 to Vaughan. The Wollen Defendants also do not dispute that the Wollen Mortgages were made within 90 days of the bankruptcy filing. However, the Wollen Defendants contend that the Wollen Mortgages were not made to or on account of an antecedent debt, and thus as a matter of law, cannot be preferential transfers.

Although "antecedent debt" is not defined by the Bankruptcy Code, a debt is "'antecedent' if it is incurred before the transfer." *Tidwell v. AmSouth Bank, N.A. (In re Cavalier Homes of Georgia, Inc.),* 102 B.R. 878, 885 (Bankr. M. D. Ga.1989) (*citing* 4 *Collier on Bankruptcy* ¶ 547.05 (15th ed.1989)). *See also In re Tulsa Litho Co.*, 232 B.R. 240, 245 (Bankr.

N.D. Okla. 1998) (stating that antecedent debt is a "pre-existing" debt).  Here, there was no "antecedent debt" because the debt, represented by the Wollen Notes, was incurred at the same time Vaughan granted the Wollen Mortgages, on December 30, 2009.  Therefore, the Wollen Mortgages are not avoidable as preferences under § 547(b) because they were not granted for or on account of an antecedent debt.[13]

         2.  The Mortgages Are Contemporaneous Exchanges For New Value.

The Wollen Defendants further contend that the Wollen Mortgages are not preferences because they fall under the exception found in § 547(c) for contemporaneous exchanges for new value.  Section 547 (c) provides, "a trustee may not avoid . . . a transfer (1) to the extent that such transfer was–(A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor. . . [and was] in fact a substantially contemporaneous exchange ."  11 U.S.C. § 547(c).  New value is defined as "money or money's worth in goods, services, or new credit." 11 U.S.C. § 547(a)(2).  For example, a substantially contemporaneous exchange for new value occurs when goods are shipped to the debtor and the creditor requires payment on or before delivery.  *See In re Payless Cashways, Inc.*, 306 B.R. 243, 250-51 (B.A.P. 8th Cir. 2004).  Rachel Wollen Adent and David H. Wollen loaned money in exchange for the Wollen Mortgages at a single closing, thus, the transfers were substantially contemporaneous exchanges for new value and were not preferences.

As a matter of law, the Wollen Mortgages were not preferences because they were not

---

[13] In addition, the Wollen Mortgages may not satisfy the requirement in § 547(b)(5). *See Matter of Missionary Baptist Foundation of America, Inc.*, 796 F.2d 752, 759 (5th Cir. 1986) (ruling that payments to a bank holding fully secured debt could not have been preferential under § 547(b)(5) because as a secured creditor, the bank did not improve its position vis a vis other creditors).

granted on account of an antecedent debt and they were substantially contemporaneous exchanges for new value.  Hence, the Court will grant summary judgment in favor of the Wollen Defendants dismissing Count 2 of the Complaint.

IT IS ORDERED that the MOTION TO DISMISS AS TO THE WOLLEN DEFENDANTS UNDER RULE 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE WOLLEN DEFENDANTS ON COUNT 2 (Doc. No. 10) is granted in part and denied in part as follows:

1.  The MOTION TO DISMISS AS TO THE WOLLEN DEFENDANTS UNDER RULE 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE WOLLEN DEFENDANTS ON COUNT 2 (Doc. No. 10) is denied in part because the Court has subject matter jurisdiction over this adversary proceeding.

2.  The MOTION TO DISMISS AS TO THE WOLLEN DEFENDANTS UNDER RULE 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE WOLLEN DEFENDANTS ON COUNT 2 (Doc. No. 10) is granted in part by deemed consent and on the merits, and the Count 2 claims against the Wollen Defendants will be dismissed.

A separate partial summary judgment will be entered.

*James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE